IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**


JEFF ARTHUR, et al.,

                    Plaintiffs,

v.                                  CIVIL ACTION NO.   2:16-cv-00150

HOMESITE INSURANCE COMPANY
OF THE MIDWEST, et al.,

                    Defendants.


**MEMORANDUM OPINION AND ORDER**


Before the Court is Plaintiffs Jeff and Elizabeth Arthur's Motion to Remand (ECF No. 8). For the reasons that follow, the Court **DENIES** the motion.

> *I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Plaintiffs Jeff and Elizabeth Arthur are residents of Kanawha County, West Virginia. Homesite Insurance Company of the Midwest ("Homesite") is a foreign corporation with its principal place of business in Massachusetts.   According to the Complaint, Plaintiffs held an insurance policy issued by Homesite that provided insurance coverage for a particular residential property.   On March 4, 2015, Plaintiffs experienced a loss and submitted a claim for benefits under the policy.   By responsive letter attached as an exhibit to the Complaint, Homesite denied the claim in its entirety.

Plaintiffs filed suit in West Virginia state court against Homesite and the unnamed John Doe insurance agent that sold the insurance policy.   Their four-count Complaint alleges breach of

contract, violations of the West Virginia Unfair Trade Practices Act, common law bad faith, and negligence. They seek specific performance of the insurance policy, so-called *Hayseeds* damages, punitive damages, a refund of the insurance premium, costs incurred through litigation, attorney's fees, and pre- and post-judgment interest. Plaintiffs' Complaint makes plain their desire to avoid litigation in federal court. It explicitly states Plaintiffs' intent to destroy diversity of citizenship by naming their unknown insurance agent as a party. (Compl. ¶ 3, ECF No. 1-1.) The Complaint further declares that "the amount in controversy ***does NOT exceed*** $75,000," but adds "that does not mean that a jury verdict couldn't exceed that amount as plaintiff's [sic] are requesting punitive damages and *Hayseed's* damages." (*Id.* (emphasis in original).)

Homesite thereafter removed the action, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. Homesite indicates that because it is a foreign corporation and, as to the unnamed insurance agent, parties sued under fictitious names are disregarded for purposes of the jurisdictional question, complete diversity exists. It also points out that by Plaintiffs' own, albeit somewhat conflicting admission, the amount in controversy likely exceeds the jurisdictional threshold. Plaintiffs contest Homesite's assessment of the amount in controversy and move to remand.

## II.      LEGAL STANDARD

United States district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Congress provided a right to remove a case from state to federal court under 28 U.S.C. § 1441, which states, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action
> brought in a state court of which the district courts of the United States have original

2

jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).   "[F]ederal jurisdiction . . . is fixed at the time the . . . notice of removal is filed."   *Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008) (citing *Mollan v. Torrance*, 22 U.S. (9 Wheat) 537, 539 (1824)). "The burden of establishing federal jurisdiction is placed upon the party seeking removal," *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted), and defendants have the burden to show the existence of federal jurisdiction by a preponderance of the evidence, *Johnson v. Nutrex Research, Inc.*, 429 F.Supp.2d 723, 726 (D. Md.2006) (citing *Schwenk v. Cobra Mfg. Co.,* 322 F.Supp.2d 676, 678 (E.D.Va.2004)).

Section 1447 also governs the remand procedure.   It provides, in relevant part, that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."   28 U.S.C. § 1447(c). Because removal of civil cases from state to federal court infringes state sovereignty, courts strictly construe the removal statute and resolve all doubts in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined."); *Mulcahey*, 29 F.3d at 151 ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction.") (citation omitted); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (noting "Congress' clear intention to restrict removal

3

and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction") (citation omitted).

## III.    DISCUSSION

Despite their initial attempt to destroy diversity by suing their John Doe insurance agent, Plaintiffs do not dispute that the parties are completely diverse.  *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").   Thus, the only issue before the Court is whether the amount in controversy exceeds $75,000.

When a civil action is removed to federal court, the amount requested in the plaintiff's complaint generally controls the determination of whether the jurisdictional amount is satisfied. *See Bartnikowski v. NVR, Inc.*, 307 Fed. App'x 730, 734 (4th Cir. 2009); *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993) ("The general federal rule is to decide the amount in controversy from the complaint itself." (citation omitted)).   In a case where the complaint contains no *ad damnum* clause, however, this district requires "the defendant [to] prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."[1]  *Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 962 (S.D. W. Va. 2011) (citing *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001)); *see Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996) ("A defendant that removes a case from state court in which the damages

---

[1] The Fourth Circuit, unlike its sister circuits, has declined to expressly adopt this (or any) standard "as the appropriate burden to which removing defendants should be held in proving the amount in controversy where plaintiffs leave damages unspecified."   *Bartnikowski*, 307 Fed. App'x at 734 n.7 (citations omitted); *see also Rota v. Consolidation Coal Co.*, 175 F.3d 1016, *1 n.4 (4th Cir. 1999) (unpublished per curiam) (declining to adopt a particular standard for assessing the value of an unspecified damage claim on removal).

4

sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount." (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)).

Plaintiffs do not offer facts to counter Homesite's view of the amount in controversy.   In addition to relying on what appears to have been a half-hearted disclaimer of damages in the Complaint,[2] Plaintiffs argue vaguely that Homesite has failed to carry its burden to "prov[e] jurisdiction."   (Pls. Mot. Remand, ECF No. 8 at 2.)   This point is worth clarification.   The law does not, as Plaintiffs argue, require Homesite to establish jurisdiction by a "legal certainty."   (*Id.* at 3.)   Homesite does not have to "prove" jurisdiction at all.   *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006) (a removing party cannot "prove" jurisdiction, which, as a legal conclusion, is "a *consequence* of facts rather than a provable 'fact.'" (emphasis in original)). The preponderance standard discussed above only obligates a removing party to prove "contested factual assertions."   *Id.* (noting that "[w]hether damages will exceed $75,000 is not a fact but a prediction").   The Seventh Circuit explained the matter in this way:

> To recap: a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal.   Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed.

---

[2] Plaintiffs never place a monetary amount on the value of their insurance claim or the damages they seek; rather, they only aver generally that the amount in controversy does not exceed $75,000.   If this constitutes an attempt by Plaintiffs to stipulate to damages below the requisite jurisdictional amount, it is insufficient. *See McCoy*, 147 F. Supp. 2d at 485–86 (requiring a "formal, truly binding, pre-removal stipulation signed by counsel and [the] client explicitly limiting recovery" to be filed with the complaint in order to prevent removal (citation omitted)).   Plaintiffs cannot defeat federal jurisdiction by insisting that the amount in controversy is less than $75,000, on the one hand, but then admitting that they could be entitled to and would accept damages in excess of this amount on the other.

*Id.* at 543; *Lanier v. Norfolk S. Corp.*, 256 Fed. App'x 629, 631–32 (4th Cir. 2007) (unpublished) (noting that once the proponent of jurisdiction has set forth the amount in controversy, federal jurisdiction exists unless the opposing party shows by a legal certainty that the judgment will be less (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448–49 (7th Cir. 2005)).   In a situation where, as here, the removing defendant "claim[s] diversity jurisdiction in the face of a silent complaint," this rule merely requires the defendant to "establish what the plaintiff stands to recover."   *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (quoting *Meridian*, 441 F.3d at 541–42) (internal quotation marks omitted).

Homesite endeavors to support its jurisdictional allegations by three principal means.   It first notes Plaintiffs' concession that a jury verdict in this case could exceed $75,000 after inclusion of punitive and *Hayseeds* damages.[3]   *See Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 80 (W. Va. 1986) (holding that when a policy holder substantially prevails in a claim against its insurer, the policy holder can recover attorney's fees incurred in vindicating its claim, net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience). This Court routinely considers the plaintiff's valuation of her case as a factor in determining the amount in controversy.   *See Melton v. Precision Laser & Instruments, Inc.*, No. 2:12-cv-1697, 2012 WL 6703148, at *3 (S.D. W. Va. Dec. 26, 2012) (considering a plaintiff's settlement demands as a factor in meeting amount in controversy); *Scaralto*, 826 F. Supp. 2d at 964 (reviewing West Virginia federal district court decisions that treat settlement offers as "just one piece of evidence").   *But see id.* at 968–69 (adopting a rule that a settlement demand in excess of

---

[3] Plaintiffs' Complaint does not indicate the value of their insurance claim, but the Court assumes based on Plaintiffs' allegations that it is some amount less than $75,000.

$75,000 should be treated as definitive unless the plaintiff shows to a legal certainty that she cannot recover this amount). Particularly because the Complaint contains no *ad damnum* clause, Plaintiffs' admission may be the best evidence of the amount to which they believe they are entitled. *See id.* ("[T]he amount in controversy is what the plaintiff claims to be entitled to or demands." (citing *Brill*, 427 F.3d at 449)).

Second, Homesite argues that West Virginia law permits punitive and *Hayseeds* damages on Plaintiffs' claims, and that these damages should be included in the amount in controversy calculation. "This Court has previously found that a request for punitive damages, where properly recoverable, inevitably inflates a plaintiff's potential recovery." *Bryant v. Wal-Mart Stores E., Inc.*, 117 F. Supp. 2d 555, 556 (S.D. W. Va. 2000) (citation omitted). "If relevant state law permits punitive damages on the facts alleged, such punitive damages are part of the amount in controversy for jurisdictional amount purposes." *Mullins v. Harry's Mobile Homes, Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). Under West Virginia law, punitive damages are available for an insurer's refusal to pay on a claim if the policyholder can prove "actual malice" in the settlement process. *See Hayseeds*, 352 S.E.2d at 80–81. Plaintiffs have alleged Homesite acted with "actual malice." (Compl. ¶¶ 17, 24, 32, ECF No. 1-1.) Plaintiffs' other *Hayseeds* damages, specifically, damages for "aggravation, mental anguish, humiliation, embarrassment, emotional distress, and inconvenience," (*see id.* ¶ 30), also inflate the amount in controversy. *See Mullins*, 861 F. Supp. at 24. Plaintiffs have alleged Homesite acted in bad faith by denying their insurance claim; further, that it unreasonably delayed the claim's resolution, failed to conduct a proper investigation, and put its interests above those of their insured. (*See id.* ¶¶ 33–34.) These

7

allegations are sufficient to prove that both punitive and so-called *Hayseeds* damages are at issue in this case.

As final evidence of the amount in controversy, Homesite presents three jury verdicts rendered in comparable cases assigning liability in excess of $75,000.   (Def. Resp., ECF No. 10 at 6.)   The first of these three was litigated in South Carolina federal court.   The jury awarded $90,000 after finding that the insurer acted in bad faith, but did not award punitive damages.   From the brief factual summary provided with the electronic report of the jury's verdict, it appears that the case was factually similar to the case at hand.   *Gilliard v. Great Lakes Ins.*, 2:12cv00867, 2014 WL 6766212 (D.S.C. July 30, 2014).   The Court notes, however, that the jury's verdict did not arise from application of West Virginia law, and Homesite makes no attempt to address the similarities that might exist between the substantive bad faith insurance laws of the two states. Homesite's other two cases are from West Virginia state court, but, while they record multi-million dollar jury verdicts, they are, at best, only marginally relevant on their facts.   In *Kocher v. Oxford Life Insurance*, a West Virginia jury awarded $5 million in compensatory damages and $34 million in punitive damages on behalf of a permanently disabled man whose life insurance company rejected his legitimate claims.   Homesite neglects to mention that the West Virginia Supreme Court reversed and remanded the case after finding that the trial court improperly instructed the members of the jury that it was their "duty" to assign punitive damages.   *Kocher v. Oxford Life Ins. Co.*, 602 S.E.2d 499, 502, 504 (W. Va. 2004).   The third allegedly comparable case Homesite puts forward to support federal jurisdiction varies is plainly dissimilar and therefore of little precedential value.   In the case of *Hamrick v. CAMC et al.*, a West Virginia jury awarded $5 million in compensatory and $20 million in punitive damages to a physician after a local hospital

8

revoked his attending physician privileges.  *See Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 701 (S.D. W. Va. 2009) (indemnity action arising from dispute over payment of the jury's verdict; discussing underlying litigation).   While these cases may be the best examples available to Homesite given the rarity of civil jury trials, the Court has no evidence from which to infer that Plaintiffs' garden-variety bad faith allegations could justify a multi-million dollar verdict.   This is particularly true considering Plaintiffs' assertion that their economic damages, whatever their value, do not exceed $75,000.   These verdicts therefore cast little light on the value of Plaintiffs' obscure damage claims.   While these cases suggest that a finding of bad faith may subject an insurer to significant monetary damages, the Court must find they weigh only faintly in favor of diversity jurisdiction in this case.

Homesite also claims that prospective attorney's fees, which Plaintiffs demand, should be added to the amount in controversy calculation.   Where a state statute "provides for the recovery of attorneys' fees as a substantive right, they are properly includable in the amount in controversy estimate."  *Bartnikowski*, 307 Fed. App'x at 736 n. 12 (citing *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)).   Some support also exists for the inclusion of attorney's fees in the amount in controversy where clearly established common law provides the source of substantive rights. *See CSX Trans., Inc. v. Gilkison*, 2007 WL 601491, at *1(N.D. W. Va. Feb. 22, 2007) (citing *Smith v. GTE Corp.*, 236 F. 3d 1292, 1305 (11th Cir. 2001)).   However, because an estimation of attorney's fees at this early stage of litigation is purely speculative, it "cannot be used to augment the amount-in-controversy calculation."  *Bartnikowski*, 307 Fed. App'x at 736 n. 12; *see Caufield v. EMC Mortgage Corp.*, 803 F. Supp. 2d 519, 529 (S.D. W. Va. 2011) (declining to consider

attorneys' fees in determining amount in controversy).   Consequently, attorneys' fees will not be included in calculating the amount in controversy.

Thus, two factors—the nature of Plaintiffs' claims and their admission that a jury verdict could reasonably exceed $75,000—persuade the Court that Homesite has established by a preponderance of the evidence that Plaintiffs stand to recover more than the jurisdictional minimum of $75,000.   Plaintiffs have chosen to pursue claims against a diverse party, seeking unspecified damages of various kinds, including punitive damages and damages for emotional distress, aggravation, mental anguish, humiliation, embarrassment, and inconvenience.   Without a valid stipulation on their part that they disclaim any entitlement to an amount over the jurisdictional threshold, Plaintiffs should have reasonably expected removal to federal court.   The Court thus **DENIES** their motion to remand.

## IV.        CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Remand (ECF No. 8).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 28, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE